## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2019, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew V. Weaver,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 17, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1717<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Clayton A. Graham, Judge<br><br>Trial Court Cause No.<br>49G07-1801-CM-1920 |

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, Matthew Weaver was found guilty of two counts of Class A misdemeanor battery resulting in bodily injury, which stemmed from a physical fight between Weaver and his brother, Evan. The trial court merged the convictions and sentenced Weaver to 365 days in jail, less credit time, with 359 days suspended to probation. The court also imposed a fine, court costs, probation fees, and a $50 public defender fee. On appeal, Weaver asserts that (1) the State failed to present sufficient evidence to rebut his claim that he acted in self-defense, and (2) the trial court improperly imposed a public defender fee.

[2] We affirm in part and reverse and remand in part.

## Facts & Procedural History

[3] At the time relevant to this appeal, adult brothers Weaver and Evan lived with their father (Father) at Father's home.[1] Weaver and Evan did not have a good relationship and often argued. Weaver could not drive and relied on Evan to drive him to work and other places.

[4] On January 17, 2018, Evan removed cash from his bank account for school expenses. Evan came home around 9:00 or 10:00 p.m. and placed the money on his dresser in his room and began watching something on his laptop. Around this time, Weaver entered Evan's room and asked Evan to drive him to

---

[1] At the time of trial, Weaver was twenty-seven years old and Evan was nineteen or twenty.

get something to eat, although Weaver did not have any money. Evan said "no" to Weaver's request and told Weaver that there were "other options," such as eating food in the house or "Uber app." *Transcript Vol. II* at 7. Evan observed that Weaver was getting agitated. The brothers continued to quarrel, and Weaver grabbed Evan's cash. After Evan told Weaver that the money was for school books, Weaver set it down, and Evan pushed Weaver out of the room and closed the door.

[5] Weaver immediately started pounding on Evan's door and was able to push it open. Weaver entered the room, and he and Evan started "pushing and shoving each other," wrestling to the ground. *Id*. at 9. Weaver hit Evan with a glass jar and bit Evan on his arm. The police were called to the residence and observed bite marks and bleeding on Evan's arm as wells as scrapes and bleeding on his leg. Police observed no visible injuries to Weaver.

[6] On January 18, 2018, the State charged Weaver with two counts of battery resulting in bodily injury as Class A misdemeanors. On or around this time, Weaver completed and signed a Request for Appointment of Public Defender form. In it, Weaver averred that he was not homeless, worked at McDonald's making $800-900 per month, did not own a home, and was not responsible for any dependents.

[7] At the January 22, 2018 initial hearing, six defendants were present, including Weaver. The trial court confirmed with each defendant that he or she had read, signed, and understood the advisement of rights form, and the court read to

each the charges that he or she faced. The court then explained, "[T]he next thing we're going to talk about is that attorney situation, which is are you going to hire, or do you want to see if the public defender agency can be appointed to represent you[,]" and it advised the defendants that "those forms that you filled out" would be used by the court "to help make that determination." *Supplemental Transcript* at 8. When it was Weaver's turn, the court advised:

> And then we go to Mr. Weaver. Court will appoint the public defender agency to represent you. You're going to Court 7, and that judge does require anybody that's appointed also be assessed a [inaudible. mic noise. may have said $50] public defender fee. So again, [inaudible. same mic noise] public defender fee. Just pay it at the clerk's office, if you're able to, as soon as possible. Do you understand that, sir?

*Id.* at 10 (alterations in original). Thereafter, the trial court reviewed with Weaver the conditions of release, including a no-contact order with regard to Evan, and informed Weaver of the next court date. When asked if he had any questions for the court, Weaver said:

> WEAVER: I've got a couple. If I manage to find an attorney, would I still have to pay the $50 to the public defenders?
>
> COURT: That will be up to the judge in courtroom number 7 on how they want to handle that situation. So I can't definitively answer that question. What was your second question?

*Id.* at 17. Weaver's second question concerned whether he could "press charges . . . on the other party," and the trial court advised Weaver to discuss the matter

with his attorney. *Id*. The trial court inquired, "Any other questions, sir?" and Weaver replied, "That answers everything." *Id*. at 18.

[8] The trial court issued orders in connection with the appointment of counsel, including an Order on Petition for Counsel. Based on Weaver's Petition for Appointment of Counsel "and on a thorough examination of defendant's total financial picture and nature of the criminal charges," the court "[g]ranted" Weaver's request for counsel and stated that an attorney "shall be appointed to represent defendant" with a "[p]ublic defender fee of $50." *Appellant's Appendix Vol. II* at 30. A second document issued by the trial court was an Order of Appointment of Public Defender, in which the trial court found Weaver to be indigent and that counsel should be appointed, directed Weaver to report to the Marion County Public Defender's Office within 24 hours, and ordered the public defender to enter an appearance. The order also required Weaver "to pay the sum of $50.00 before the case is complete." *Id.* at 31.

[9] At the February 6, 2018 pretrial hearing, where Weaver appeared in person and with counsel, the parties agreed to a continuance of the pretrial conference due to discovery matters, and with regard to the public defender, the trial court reminded Weaver:

> And Mr. Weaver, you have a public defender recoupment fee to pay, and that's going to be due and owing, sir, to help offset what the taxpayers are paying for your representation, which is far more than what you're being asked to pay. And that's going to be due by February the 20th. [Your attorney] will tell you where to pay it.

*Supplemental Transcript* at 23.  That same date, Weaver paid the $50.00 fee.

[10]  The matter proceeded to bench trial on June 26, 2018.  Evan testified that he and Weaver would "get into fights" and described that there had been others worse than the present one.  *Transcript Vol. II* at 13.  Evan stated Weaver was "mainly the aggressor in most cases, and he does it to my siblings."  *Id*.  Evan acknowledged that he had his hands on Weaver's throat at one point during the struggle, when Weaver "was on top of [him] and hitting [him] with a glass Mason jar."  *Id*. at 15.

[11]  Weaver testified in his defense.  He explained that he is a diabetic and "there wasn't anything I could eat in the house that wouldn't get my sugar sky high," so he asked Evan to give him a ride for food.  *Id*. at 19.  He acknowledged that he "taunted" Evan by picking up Evan's cash that was sitting on his dresser and saying "Evan, you want me to pay for the Uber with this?"  *Id*. at 20.  According to Weaver, Evan "pushed me into the corner, then told me to leave[,]" and when Weaver did not leave quickly enough, Evan punched him in the face.  *Id*. at 21.  Weaver described that Evan "would have killed me if I didn't bite him then run out of his room like a coward."  *Id*.

[12]  At the conclusion of the evidence, the trial court determined that the State had proven that Weaver battered Evan, noting "[t]hese cases often come down to credibility" and finding "Evan Weaver more credible than Matthew Weaver." *Id*. at 28.  In sentencing Weaver, the trial court noted that Weaver had already

paid "his public defender recoupment fee[.]" *Id*. at 26-27. Weaver now appeals.

# Discussion and Decision

## *I. Sufficiency*

[13] Weaver challenges the sufficiency of the evidence contending the State failed to rebut his claim of self-defense. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. Ct. App. 2002) (citing *Sanders v. State*, 704 N.E.2d 119, 123 (Ind. 1999)). We consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Tharpe v. State*, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011), *trans. denied*. We neither reweigh the evidence nor judge the credibility of witnesses. *Wilson*, 770 N.E.2d at 801. The trier of fact is entitled to determine which version of the incident to credit and is the sole judge of the effect that any discrepancies or contradictions might have on the outcome of the case. *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007), *trans. denied*. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Wilson*, 770 N.E.2d at 801.

[14] Self-defense is a legal justification for an otherwise criminal act. *Bryant v. State*, 984 N.E.2d 240, 250 (Ind. Ct. App. 2013), *trans. denied*. To prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and

(3) had a reasonable fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800. A defendant, however, is not justified in using force if that person "has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful actions." Ind. Code § 35-41-3-2. "When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[15] Weaver asserts that, at trial, he showed that he had a right to be in Evan's room, that Evan was the initial aggressor of the violence, and that he (Weaver) had a right to use force in self-defense. He maintains that it was the State's burden to rebut one of the elements of self-defense and that it failed to do so. We reject Weaver's argument on various levels.

[16] As an initial matter, we cannot agree that Weaver was in a place he had a right to be when the conflict arose. Weaver was in Evan's bedroom, and Evan clearly did not want him there. Evan pushed Weaver out of the room into the hallway and closed the door. Weaver barged back into the room. Weaver's suggestion that "[n]othing in the record supports the contention that Evan

rescinded any permission or authority for Weaver to be in his room" is simply disingenuous. *Reply Brief* at 3.

[17] Furthermore, we cannot agree with Weaver that he "did not provoke, instigate, or participate willingly" in the violence. *Id*. at 4. After Evan declined Weaver's initial request to drive him to get food, Weaver continued to badger Evan, and, by Weaver's own admission, he "taunted" Evan by picking up Evan's money and suggesting he could use it to obtain food. *Transcript Vol. II* at 20. Evan pushed Weaver out, but Weaver re-entered Evan's room, where they pushed and shoved each other and wrestled to the ground. Weaver then hit Evan with a glass jar and bit his arm, leaving marks and causing bleeding. At a minimum, Weaver was a mutual combatant, and under Indiana law, "[A] mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense." *Wilson*, 770 N.E.2d at 801 (citing I.C. § 35-41-3-2(e)(3), providing that a person is not justified in using force "if the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action"). There is no evidence that Weaver communicated an intent to withdraw from the encounter, and he was required to do so as a precondition for a claim of self-defense.

[18] Lastly, there is no evidence that Weaver had a reasonable fear or apprehension of bodily harm, other than his self-serving statement that he thought Evan would kill him if he did not bite him and run away. The trial court expressly

stated that it did not find Weaver's version of events to be credible. We cannot reweigh the evidence or judge the credibility of witnesses on appeal. *Wilson*, 770 N.E.2d at 801. The State presented sufficient evidence to rebut Weaver's self-defense claim.

## II. *Public Defender fee*

[19] Weaver asserts that the trial court improperly imposed a public defender fee.[2] "'Sentencing decisions include decisions to impose fees and costs,' and a trial court's sentencing decision is reviewed for abuse of discretion." *De La Cruz v. State*, 80 N.E.3d 210, 213 (Ind. Ct. App. 2017) (quoting *Coleman v. State*, 61 N.E.3d 390, 392 (Ind. Ct. App. 2016)). An abuse of discretion has occurred when the sentencing decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. If the fees imposed by the trial court fall within the parameters provided by statute, we will not find an abuse of discretion. *Langdon v. State*, 71 N.E.3d 1162, 1163 (Ind. Ct. App. 2017) (citing *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011)). A defendant's

---

[2] The State maintains that because Weaver already has paid the fee, the issue is moot and "[t]here is no effective relief this Court can grant [him]." *Appellee's Brief* at 9. Weaver urges that the issue of the fee is not moot. We agree with Weaver and address the merits of his claim. *See De La Cruz v. State*, 80 N.E.3d 210, 213 (Ind. Ct. App. 2017) (holding defendant's appeal of fees ordered by probation was not moot even though he had already paid fees and completed probation).

indigency does not shield him from all costs or fees related to his conviction. *Banks v. State*, 847 N.E.2d 1050, 1051 (Ind. Ct. App. 2006), *trans. denied*.

[20]    As Weaver observes, there are three statutory provisions that address the imposition of public defender fees, and a trial court may order payment under any of the three or a combination thereof.[3] *Langdon*, 71 N.E.3d at 1164. One of those statutes, Ind. Code § 35-33-7-6, provides in relevant part:

> (a) Prior to the completion of the initial hearing, the judicial officer shall determine whether a person who requests assigned counsel is indigent. If the person is found to be indigent, the judicial officer shall assign counsel to the person.
>
> * * *

---

[3] As this court has observed, "Various conflicting provisions of Indiana Code pertain to appointment of counsel and payment of associated costs of representation for indigent criminal defendants." *Lamonte v. State*, 839 N.E.2d 172, 176 n.1 (Ind. Ct. App. 2005). The *Lamonte* court summarized the provisions:

> Indiana Code section 35-33-7-6 allows a trial court to impose a fee of $50 on a misdemeanor defendant if the court finds that the defendant is able to pay part of the cost of representation by the assigned counsel. Indiana Code section 33-40-3-6 and Indiana Code section 33-37-2-3 grant trial courts the discretion to impose representation costs against a defendant in excess of that amount in other instances. However, Indiana Code section 33-40-3-6 applies only in those situations where the court makes a finding of ability to pay the costs of representation, while Indiana Code section 33-37-2-3 applies only to those defendants that the court deems not indigent.

*Id.*; *see also Langdon v. State*, 968 N.E.2d 328, 333 (Ind. Ct. App. 2012) (discussing same three statutes concerning imposition of public defender fees).

(c) If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:

(1) For a felony action, a fee of one hundred dollars ($100).

(2) For a misdemeanor action, a fee of fifty dollars ($50).

The clerk of the court shall deposit fees collected under this subsection in the county's supplemental public defender services fund established under IC 33-40-3-1.

(d) The court may review the finding of indigency at any time during the proceedings.

The statute effectively acknowledges that "there can be degrees of indigency," such that "[o]ne may be indigent for purposes of paying private counsel thousands of dollars for representation, but still be able to pay a nominal amount to partially reimburse the costs of his appointed counsel." *Wooden v. State*, 757 N.E.2d 212, 218 n.4 (Ind. Ct. App. 2001), *trans. denied*.

[21] In the present case, although the trial court did not explicitly identify under which of the three possible statutes it was imposing the public defender fee, the record reflects that (1) the trial court made the determination at the initial hearing after appointing the public defender office to represent Weaver, and (2) the amount ordered to be paid was $50. Both of these factors are consistent with I.C. § 35-33-7-6, and we thus find that I.C. § 35-33-7-6 was the statute under which the trial court was operating. *See e.g.*, *Langdon*, 71 N.E.3d at 1164

(where defendant was charged with misdemeanor, found to be indigent, and ordered to pay a $50 public defender fee, I.C. § 35-33-7-6(c) was the statutory provision that supported the imposition of the fee at initial hearing); *Berry*, 950 N.E.2d at 800 ("The fact that Berry was found indigent at the initial hearing and the trial court ordered a fee of $100 leads us to agree with the State that the trial court imposed the public defender fee pursuant to Indiana Code Section 35-33-7-6.").

[22] On appeal, Weaver contends that "[r]egardless of what statute the trial court relied on, it should have inquired into Weaver's ability to pay the $50.00 public defender fee before assessing it on January 22, 2018" at the initial hearing, and he asks us to reimburse the fee and remand the matter for the trial court to hold a hearing to determine Weaver's ability to pay. *Appellant's Brief* at 15; *Reply Brief* at 5. We agree with Weaver in part.

[23] Here, before the initial hearing, Weaver filed a Request for Appointment of Public Defender, and in it, he affirmed under penalty of perjury that he did not own a home, was employed making $800-900 per month, and was not responsible for supporting anyone besides himself. Based on the information that Weaver had provided, the trial court ordered Weaver to pay a $50 public defender fee, which was an amount within statutory limits of I.C. § 35-33-7-6(c). As we discussed above, "If the fees imposed . . . fall within the parameters provided by statute, we will not find an abuse of discretion." *Berry*, 950 N.E.2d at 799.

That said, I.C. § 35-33-7-6 allows the trial court to order the defendant to pay a public defender fee "[i]f the court finds that the person is able to pay part of the cost of representation."  Our courts have interpreted I.C. § 35-33-7-6 to require the trial court "to make a finding regarding [the defendant's] ability to pay." *Berry*, 950 N.E.2d at 800; *see also Banks*, 847 N.E.2d at 1052 ("Under Ind. Code § 35-33-7-6 . . . a court must explicitly find a defendant can pay the fees imposed.").  Because the trial court in this case did not make such a finding, we reverse and remand to the trial court with instructions to determine whether Weaver is able to pay the $50 public defender fee.  *See Berry*, 905 N.E.2d at 800 (holding that "trial court was required to make a finding regarding Berry's ability to pay" and remanding for trial court "to determine whether Berry is able to pay the $100 public defender fee").  Although Weaver asks for a hearing on remand, this court has observed that "[s]ection 35-33-7-6 does not require an additional hearing, only a finding of ability to pay." *Id*. at 802.  Thus, in making its determination, the trial court on remand may, but is not required to, hold a hearing.

Judgment affirmed in part and reversed and remanded in part.

Najam, J. and Pyle, J., concur.