## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 08 2019, 6:30 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Milton Zambrano Gonzalez, *Appellant-Defendant,* | August 8, 2019 |
| v. | Court of Appeals Case No. 18A-CR-3004 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Mark D. Stoner |
| | Trial Court Cause No. 49G06-1708-MR-29166 |

**May, Judge.**

[1] Milton Zambrano Gonzalez ("Gonzalez") appeals his conviction of Level 2 felony voluntary manslaughter.[1] Gonzalez argues he was acting in self-defense and the State did not provide sufficient evidence to disprove this. We affirm.

## Facts and Procedural History

[2] On the night of July 29, 2017, Gonzalez and his girlfriend, Rachel Mendoza-Nieto, went out drinking with a group of friends. One member of the group was Wilson Hernandez, whom Gonzalez had just met that night. The group went to bars, nightclubs, and an afterparty at a friend's house. While out, Gonzalez consumed several beers and used cocaine multiple times. The group returned to Gonzalez's apartment around 6 a.m. the next day.

[3] Despite already being intoxicated, Gonzalez and Hernandez continued to drink when they got back to the apartment. After being at the apartment for some time, Hernandez began to make sexual gestures towards Mendoza-Nieto, making her uncomfortable. Mendoza-Nieto told Gonzalez what happened. Gonzalez told Hernandez to respect his house and Mendoza-Nieto. Hernandez and Gonzalez began to argue. Hernandez told Gonzalez he could have people come kill Gonzalez if he wanted.

[4] Gonzalez went into the kitchen but then returned and continued arguing with Hernandez. Hernandez was sitting on the couch with Gonzalez standing in

---

[1] Ind. Code § 35-42-1-3 (2014).

front of him. Mendoza-Nieto noticed Gonzalez had pulled a knife out of the back of his pants and was holding it behind his back. Mendoza-Nieto tried to grab the knife, but Gonzalez pushed her away. Hernandez swung his arm at Gonzalez, and Gonzalez then took the knife and began to stab Hernandez. Gonzalez stabbed Hernandez thirteen times. As Hernandez collapsed on the floor, Gonzalez kicked Hernandez in the head.

[5] Gonzalez's roommate, Omar Vidal Antuner, woke up and came out to see what had happened. Omar saw Hernandez dead and Gonzalez holding the knife. Omar asked Gonzalez why he did it. Gonzalez said Hernandez had been disrespectful to his girlfriend. Gonzalez took Hernandez's cellphone and instructed Mendoza-Nieto to grab the knife. They took Omar's keys and fled in his van. Gonzalez texted Omar, saying he would return to get rid of the body and threatening to hurt Omar if he told anyone. When Gonzalez returned, Omar went to the gas station and called the police. When the police knocked, Gonzalez fled and escaped.

[6] On August 9, 2017, the State charged Gonzalez with murder, a felony.[2] The trial court found Gonzalez guilty of Level 2 felony voluntary manslaughter. The trial court sentenced him to twenty-eight years executed.

# Discussion and Decision

---

[2] Ind. Code § 35-42-1-1 (2017).

[7]     Gonzalez argues the record contains insufficient evidence to support his conviction. When considering the sufficiency of evidence, "a reviewing court does not reweigh the evidence or judge the credibility of the witnesses." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (internal citation omitted).

[8]     To prove Gonzalez committed voluntary manslaughter, the State had to present evidence that Gonzalez "knowingly or intentionally . . . kill[ed] another human being . . . while acting under sudden heat." Ind. Code § 35-42-1-3 (2014). Gonzalez does not deny that he stabbed Hernandez. Rather, Gonzalez argues he was acting in self-defense.

> "To prevail on a claim of self-defense, a defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). "When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.* If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[9] Mendoza-Nieto testified that, while Hernandez and Gonzalez were arguing, Gonzalez went to the kitchen and got a knife. (Tr. Vol. II at 108.) Gonzalez then walked up to Hernandez, who was sitting on the couch, and continued arguing. (*Id*.) Mendoza-Nieto tried to grab the knife from Gonzalez, and another friend tried to step in and keep Gonzalez away from Hernandez. (*Id*. at 109.) Once Hernandez realized Gonzalez had a knife, Hernandez tried to punch him. Hernandez missed, and Gonzalez began to stab him. (*Id*. at 110.) The two began to wrestle, and Gonzalez continued to stab Hernandez. At some point during the fight, Hernandez got up from the floor, and then he collapsed. Gonzalez then kicked Hernandez in the head. (*Id*. at 114.) When Gonzalez's roommate asked him why he did it, Gonzalez said he did it because Hernandez was disrespectful to his girlfriend. (*Id*. at 52.)

[10] From this evidence, a jury could have reasonably rejected Gonzalez's self-defense claim, because he did not act without fault or have a reasonable fear of death or serious bodily harm. Gonzalez approached Hernandez with a knife while Hernandez was sitting on the couch in a non-aggressive manner. Multiple people attempted to stop Gonzalez prior to the attack. Hernandez, who was unarmed, did not try to punch Gonzalez until he found out Gonzalez was holding a knife behind his back. Because Gonzalez willingly participated in the fight, his claim of self-defense fails. *See Wolf v. State*, 76 N.E.3d 911, 917 (Ind. Ct. App. 2017) (defendant's self-defense claim properly rejected when evidence established he willing participated in fight).

# Conclusion

Because the State provided sufficient evidence showing Gonzalez willingly participated in the fight, his claim of self-defense fails. Accordingly, we affirm.

Affirmed.

Mathias, J., and Brown, J., concur.