## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2020, 9:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Borschel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy Fager,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2413<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1903-F3-10577 |

**May, Judge.**

[1] Jeremy Fager appeals his convictions of Level 5 battery resulting in serious bodily injury;[1] Level 6 felony strangulation;[2] and Class A misdemeanor domestic battery.[3] Fager argues the State did not sufficiently rebut his claim of self-defense. We affirm.

## Facts and Procedural History

[2] On March 16, 2019, Fager and P.S. went to several bars to celebrate St. Patrick's Day. One of Fager's friends drove the couple from bar to bar and eventually returned them to a residence in which Fager rented a room. After the friend drove away, Fager realized he had left his room key in the friend's car. He texted the friend to come back, and Fager and P.S. sat down in the common living room of the residence. P.S. waited with Fager because her keys were in Fager's locked room.

[3] While in the living room, Fager said to P.S., "Why are you being such a bitch?" (Tr. Vol. II at 44.) In response, P.S. went into the kitchen and sat near the backdoor "[b]ecause [she] could tell he was mad." (*Id*. at 45.) Fager followed P.S. into the kitchen and asked her what she was doing. She told him, "I'm just going to sit out here and wait for [the friend] to get back with the keys so I can leave." (*Id*.) Fager told P.S. that she needed to wait outside. P.S. refused, and

---

[1] Ind. Code § 35-42-2-1(g)(1).

[2] Ind. Code § 35-42-2-9(c) (2017).

[3] Ind. Code § 35-42-2-1.3(a)(1) (2016).

Fager "pulled [her] up by [her] hair." (*Id*.) Fager then started hitting P.S. on the side of her head with a closed fist. P.S. saw a knife next to a pizza box in the kitchen and grabbed it. Fager hit her again on the right side of her face, and P.S. fell on the ground. Fager began kicking P.S., and P.S. stabbed Fager with the knife. Fager then said, "This bitch stabbed me." (*Id*. at 46.) P.S. attempted to crawl back into the living room while yelling for help. Fager came up behind P.S., got on her back, and started to strangle her. P.S. was able to get away from Fager and leave the residence.

[4] P.S. tried to get help from nearby neighbors but was unsuccessful. She ran down the street to a bar called Club Paradise and the bouncer there called 911 for her. The responding officer testified regarding P.S.'s condition following the altercation:

> She was completely covered in blood. . . . Her hair was covered in blood. Her face was covered in blood. Her right eye was completely black and swollen shut. Her right ear was completely black and blue and swollen. Her – all of her clothing, from her shirt all the way down to her shoes, covered in blood, and her hands were mangled. It looked like several of her fingers were broken and bloody.

(*Id*. at 13.) An ambulance transported P.S. to the hospital where she was treated for an orbital fracture, lacerations and fractures to her fingers, and other bruising associated with strangulation. Fager suffered a cut on his finger that "wasn't nothing [sic] worthy of transporting to a hospital. So they just treated it on site." (*Id*. at 28.)

[5]     On March 20, 2019, the State charged Fager with Level 3 felony criminal confinement;[4] Level 5 felony criminal confinement;[5] Level 5 felony battery resulting in serious injury; Level 6 felony strangulation; Level 6 felony criminal confinement;[6] Level 6 felony battery resulting in bodily injury;[7] and Class A misdemeanor domestic battery. The trial court held a bench trial starting on July 25, 2019, and continued the trial to August 23, 2019, based on witness unavailability.

[6]     At the end of the trial, the trial court found Fager guilty of Level 6 felony strangulation, Level 5 felony battery resulting in serious bodily injury, Level 6 felony battery resulting in bodily injury, and Class A misdemeanor domestic battery. The trial court merged the Level 5 and Level 6 felony battery convictions based on double jeopardy. On September 12, 2019, the trial court sentenced Fager to an aggregate sentence of eight years, with five executed, two years on work release, and one year on probation.

# Discussion and Decision

[7]     When considering the sufficiency of evidence, "a reviewing court does not reweigh the evidence or judge the credibility of the witnesses." *McHenry v.*

---

[4] Ind. Code § 35-42-3-3(b)(2) (2014).

[5] Ind. Code § 35-42-3-3(b)(1) (2014).

[6] Ind. Code § 35-42-3-3(a) (2014).

[7] Ind. Code § 35-42-2-1(e)(1).

*State*, 820 N.E.2d 124, 126 (Ind. 2005). We must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (internal citation omitted). Fager argues the State did not present sufficient evidence that he committed the crimes for which he was convicted because, while he acknowledges that he engaged in a physical altercation with P.S., he contends he did so in self-defense after P.S. stabbed him.

[8] "To prevail on a claim of self-defense, a defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). "When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.* If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[9] A person is not justified in using force in self-defense when "the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person

the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." Ind. Code § 35-41-3-2(g)(3). The parties dispute whether Fager negated his self-defense claim by provoking, instigating, or willingly participating in the altercation.

[10] Here, Fager instigated the physical altercation when he pulled P.S. up by her hair in the kitchen because she refused to wait outside. He punched her multiple times with a closed fist and began kicking her while she was on the floor before she stabbed him. Fager was the initial aggressor and at no time did he withdraw from combat or communicate his desire to do so. Fager's alternate version of the facts is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See McHenry*, 820 N.E.2d at 126 (appellate court does not reweigh evidence or judge credibility of witnesses). The evidence was sufficient to rebut Fager's claim of self-defense, and we accordingly affirm his convictions. *See Huls v. State*, 971 N.E.2d 739, 744 (Ind. Ct. App. 2012) (initial aggressor did not withdraw or communicate an intent to withdraw from physical confrontation, thus self-defense claim failed), *trans. denied*.

# Conclusion

[11] The State presented sufficient evidence to rebut Fager's self-defense claim because it presented testimony that Fager was the initial aggressor in the physical altercation with P.S. and did not withdraw or communicate his intent to withdraw from the altercation at any time. Accordingly, we affirm.

Affirmed.

Crone, J., and Pyle, J., concur.