## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2020, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ajia Denise Sanders, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 19, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2768 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Angela Dow Davis, Judge <br><br> Trial Court Cause No. <br> 49G16-1908-CM-32750 |

**Crone, Judge.**

# Case Summary

[1] Ajia Denise Sanders appeals her convictions, following a bench trial, for class A misdemeanor domestic battery and class A misdemeanor battery. She asserts that the State presented insufficient evidence to rebut her self-defense claim. We disagree and therefore affirm.

# Facts and Procedural History

[2] The record indicates that Sanders dated M.M., on and off, for approximately two years, before the couple finally broke up in 2018. On August 11, 2019, M.M. went to dinner and then to a club with her long-time friend Kayla Meadows to celebrate Meadows's birthday. M.M. and Meadows arrived at the club around 11:00 or 11:30 p.m. At one point, M.M. noticed that Sanders was also at the club with a friend. M.M. avoided Sanders because they had not spoken since their breakup.

[3] At around 2:30 a.m., M.M. and Meadows left the club. After M.M. had driven approximately one block down the street, Meadows saw Sanders's friend and wanted to talk to her so that it would not be awkward the next time the women saw each other. Meadows jumped out of M.M.'s car and approached Sanders's friend. As Meadows approached Sanders's friend, she realized that Sanders was also standing nearby. Meadows would not have exited the car to talk to the friend if she had seen Sanders.

[4] M.M. parked the car and waited for Meadows. M.M. did not get out of the car because she was "uncomfortable" and did not want to "be part of any

conversation." Tr. Vol. 2 at 11. As Meadows talked to Sanders's friend, Sanders approached M.M.'s car and opened the door. Sanders yelled at M.M. and challenged her to a fight. M.M. ignored Sanders.

[5] Sanders walked away from M.M.'s car and back toward the other two women. Moments later, M.M. heard shouting and looked up. She saw that Meadows was on the ground and that Sanders was on top of her and punching her. While straddling Meadows, Sanders punched her with a closed fist more than seven times in the head. M.M. ran over and shouted at Sanders to get off Meadows. Sanders grabbed M.M. by the hair and threw her to the ground. Sanders then mounted M.M. and punched her approximately eight to ten times. After M.M. was finally able to get up, Sanders punched her three to five more times. When Meadows also got up, Sanders grabbed the back of her shirt and tried to pull it over her head. Sanders stopped the attack only after her friend told her to stop. Meadows immediately called the police, and Sanders ran off. M.M. suffered a sore jaw and teeth as a result of the attack. Meadows suffered scrapes, bruising, and swelling on her forehead, elbow, and left knee.

[6] The State charged Sanders with domestic battery (regarding M.M.) and battery causing bodily injury (regarding Meadows), both as class A misdemeanors. During the bench trial, Sanders claimed she acted in self-defense. The trial court found her guilty as charged. The trial court sentenced her to concurrent sentences of 363 days on each count, all suspended to probation. The trial court further ordered that Sanders complete thirteen weeks of anger

management classes and twenty hours of community service. This appeal ensued.

## Discussion and Decision

[7] Sanders claims that the State presented insufficient evidence to rebut her self-defense claim. When a defendant challenges the sufficiency of the State's evidence to rebut a claim of self-defense, our standard of review remains the same as for any sufficiency of the evidence claim. *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999). We do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (citation omitted).

[8] A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. Ind. Code § 35-41-3-2(c). Force is not justified if the person asserting self-defense has "entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." Ind. Code § 35-41-3-2(g)(3). Before claiming self-defense, "a mutual combatant, whether or not the initial aggressor, must declare an armistice." *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). Moreover, "[w]here a person

has used more force than is reasonably necessary to repel an attack the right of self-defense is extinguished, and the ultimate result is that the intended victim then becomes the perpetrator." *Geralds v. State*, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995), *trans denied*.

[9] "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied* (2017). "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.*[1] If a defendant is convicted despite her claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[10] Here, the State presented ample evidence to rebut Sanders's self-defense claim. First, the State presented testimony which indicated that Sanders was the initial aggressor. Both M.M. and Meadows testified that Sanders was the initial aggressor and that she instigated an attack against each of them separately.

---

[1] Although Sanders does not challenge the sufficiency of the State's evidence in chief, we note that to convict her of class A misdemeanor domestic battery, the State was required to prove that M.M. was her family or household member and that she touched her in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1.3(a)(1). "Family or household member" includes people who are "dating or [have] dated" and people who are or were "engaged in a sexual relationship[.]" Ind. Code § 35-31.5-2-128(a). To convict Sanders of class A misdemeanor battery, the State was required to prove that Sanders knowingly or intentionally touched Meadows in a rude, insolent, or angry manner and it resulted in bodily injury to Meadows. Ind. Code § 35-42-2-1(c)(1), -(d)(1).

Second, to the extent that Sanders claims to have been a mutual combatant, the trial court found no evidence that Sanders ever declared an armistice. Indeed, the evidence demonstrated that Sanders did not withdraw or communicate an intent to withdraw from the violence. Rather, she relented only when instructed by her friend to do so, and she fled before police arrived on the scene.

[11] Moreover, the trial court specifically found that it could reasonably infer from the evidence presented that Sanders used more force than necessary under the circumstances. As noted by the trial court, "you do not just get to whale on people…[y]ou are only allowed to use reasonable force to protect yourself." Tr. Vol. 2 at 33. The trial court found that the photographs of Meadows's injuries were consistent with its determination that Sanders did more than use the force necessary to repel an alleged attack, and therefore any right to self-defense she may have had was extinguished. In sum, based upon the evidence, the trial court concluded that it simply did "not believe that [Sanders] acted in self-defense." *Id*.

[12] Sanders's argument that the State presented insufficient evidence to negate her self-defense claim is merely an invitation to reweigh the evidence and judge the credibility of witnesses, which we will not do. *See Wilson*, 770 N.E.2d at 801. Because there was substantial probative evidence and reasonable inferences drawn from the evidence that could have allowed a reasonable trier of fact to find that the State negated Sanders's self-defense claim beyond a reasonable doubt, and because she does not otherwise challenge the sufficiency of the evidence to support her convictions, we affirm.

[13]     Affirmed.

Bailey, J., and Altice, J., concur.