

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Demetrius Holloway,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 18, 2016

Court of Appeals Case No.
71A04-1508-CR-1292

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1408-F6-71

**Crone, Judge.**

## Case Summary

A police officer arrested Demetrius Holloway for operating a motor vehicle while intoxicated ("OWI") and took him to jail, where Holloway threatened to "f[*]ck [the officer] up." Tr. at 23. Holloway pled guilty to class A misdemeanor OWI, and the trial court found him guilty of level 6 felony intimidation. On appeal, he challenges the sufficiency of the evidence supporting his intimidation conviction. We affirm.

# Facts and Procedural History

On the afternoon of August 1, 2014, Holloway drank some beer and drove to a fast food restaurant, where he collided and had an altercation with another motorist. South Bend Police Officer Joseph Stitsworth was dispatched to the scene. Officer Stitsworth suspected that Holloway was intoxicated and administered field sobriety tests, all of which Holloway failed. The officer handcuffed Holloway and transported him to jail.

Holloway was uncooperative getting into and out of Officer Stitsworth's vehicle and repeatedly claimed that he had done nothing wrong. During the jail booking procedure, the handcuffed Holloway became agitated and said to Officer Stitsworth, "I hope you die. I hope you die tonight." *Id*. A few minutes later, Holloway stood up, started to approach Officer Stitsworth, and said, "I will f[*]ck you up." *Id*. Officer Stitsworth interpreted this as a threat and told Holloway to sit down.

[4]     The State charged Holloway with level 6 felony intimidation, class A misdemeanor OWI, class C misdemeanor OWI, and class B misdemeanor battery. In April 2015, Holloway pled guilty to class A misdemeanor OWI, and the State dismissed the other misdemeanor charges. A bench trial was held on the intimidation charge. Both Officer Stitsworth and Holloway testified. The State offered into evidence a DVD containing video and audio of the field sobriety tests and Holloway's trip to jail and audio of his interactions with Officer Stitsworth inside the jail, all of which was recorded by the officer's in-car camera and body microphone. At the close of evidence, the trial court took the matter under advisement. In May 2015, the trial court issued a written order finding Holloway guilty of intimidation. This appeal ensued.

## Discussion and Decision

[5]     Holloway challenges the sufficiency of the evidence supporting his intimidation conviction. Our standard of review is well settled:

> This court will not reweigh the evidence or assess the credibility of witnesses. Only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007) (citations omitted). "Reversal is appropriate only when reasonable persons would not be able to

form inferences as to each material element of the offense." *Naas v. State*, 993 N.E.2d 1151, 1152 (Ind. Ct. App. 2014).

[6] The State alleged that Holloway committed level 6 felony intimidation by communicating a threat to a law enforcement officer (i.e., that he would "f[*]ck [Officer Stitsworth] up"), with the intent that the officer be placed in fear of retaliation for a prior lawful act (i.e., placing Holloway under arrest). *See* Appellant's App. at 22 (trial court's order), 35 (original charging information); Tr. at 3-4 (information as amended before trial); Ind. Code § 35-45-2-1(b), -(c) (intimidation statute as of August 1, 2014, when crime was committed). The intimidation statute defines "threat" as "an expression, by words or action, of an intention to … unlawfully injure the person threatened or another person[.]" Ind. Code § 35-45-2-1(c)(1).

[7] The gist of Hollway's argument appears to be that his profane statement to Officer Stitsworth did not constitute a threat because it was brief and he was handcuffed and in jail when he uttered it. Holloway attempts to contrast his statement with that of the defendant in *Townsend v. State*, 753 N.E.2d 88 (Ind. Ct. App. 2001), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007). After Townsend was arrested, handcuffed, and placed in a patrol car, he told the arresting officer, "I'm going to get you and I'm going to get your family. You're not safe from me anywhere. No matter how long it takes me, I will get you." *Id*. at 90. He was convicted of intimidation and argued on appeal that "there was no proof" that his statements could be viewed as a

threat. *Id*. at 91. We disagreed and held that "the jury could reasonably conclude that Townsend communicated a threat to" the officer. *Id*.

[8] We find no basis for distinguishing Townsend's threat from Holloway's. Both men were handcuffed and incapable of carrying out their stated intent to injure[1] when the statements were made. Holloway cites no authority for the proposition that a person must be capable of inflicting injury when the statement is made or that a statement must be lengthy or detailed in order to constitute a threat. Likewise, he cites no authority for his suggestion that a person must make multiple statements over a "long period" before he may be convicted of intimidation. Appellant's Br. at 5.[2] In sum, we find Holloway's argument unavailing and therefore affirm his intimidation conviction.

[9] Affirmed.

Vaidik, C.J., concurs.

Bailey, J., dissents with opinion.

---

[1] Holloway's contention that his statement "is more akin to a 'F*** you' than to a threat to do physical harm" is a blatant request to reweigh evidence in his favor, which we may not do. Appellant's Br. at 5.

[2] In its written order, the trial court addressed the concept of a "true threat" as discussed in *Brewington v. State*, 7 N.E.3d 946 (Ind. 2014), and found that "it was objectively reasonable for Officer Stitsworth to be placed in fear for his safety based upon [Holloway's] threat." Appellant's App. at 22-23. Holloway does not mention "true threat" or objective reasonableness in his appellant's brief and merely attempts to distinguish *Brewington* based on the number of statements that Brewington made and the period of time over which he made them.

# IN THE
# COURT OF APPEALS OF INDIANA

Demetrius Holloway,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 18, 2016

**Bailey, Judge, dissenting.**

Holloway challenges his conviction for Intimidation, arguing that there was insufficient evidence to sustain the conviction in the absence of a true threat. The majority affirms. Because I disagree with this conclusion, I respectfully dissent.

The statute that defines the offense of Intimidation provides, in relevant part, "A person who communicates a threat to another person, with the intent … that the other person be placed in fear of relation for a prior lawful act …commits intimidation." Ind. Code § 35-45-2-1(a). What is otherwise a Class A misdemeanor is elevated to a Level 6 felony when the target of the threat is a law enforcement officer. I.C. § 35-45-2-1(b)(1)(B)(i).

Recognizing that speech has constitutional dimensions, courts have recognized limits on criminalization of speech offenses like Intimidation. Thus, the

Indiana Supreme Court has held that for speech to amount to a "true threat" under Indiana law, there are "two necessary elements." *Brewington v. State*, 7 N.E.3d 946, 964 (Ind. 2014). The "speaker [must] intend his communications to put his targets in fear for their safety"—that is, the elements of the Intimidation statute must be met—and the communications must have been "likely to actually cause such fear in a reasonable person similarly situated to the target." *Id.* With respect to the speaker's intent, "a *mens rea* determination 'is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof.'" *Id.* (quoting *Hampton v. State*, 961 N.E.2d 480, 487 (Ind. 2012)).

As to the second element, the likelihood of the statement's effect, we employ "a 'reasonable victim' test—whether it was *objectively* reasonable for the victim to fear for [his] safety." *Id.* at 969 (emphasis in original). Context is crucial in cases such as this. *Virginia v. Black*, 538 U.S. 343, 357, 365-66 (2003) (recognizing that even for cross-burning, context is central to whether speech is a threat or protected expression); *Watts v. United States*, 394 U.S. 705, 707 (1969) (holding, with respect to a statute criminalizing threats against the President of the United States, that "a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind," so that "a threat must be distinguished from what is constitutionally protected speech"). Thus, the nature of the alleged victim's experience and work has played a role in the Indiana Supreme Court's jurisprudence on the question of a true threat. In *Brewington*, our supreme court

observed that part of what made Brewington's communications threatening, beyond their repetitiveness and clear meaning, was how unusual they were relative to the experiences of Brewington's victims, a psychologist and a judge. 7 N.E.3d at 970-71. Each victim commented in testimony that in their extensive experiences, they had never encountered the persistent and repeated threats and erratic behavior Brewington displayed. *Id.* Indeed, the psychologist in *Brewington* was so concerned by Brewington's threats to his family that additional home security and police protection were put in place. *Id.* at 971. These reactions, the *Brewington* Court held, "are precisely what we would expect of objectively reasonable people under similar circumstances": not only were Brewington's statements threatening, but the victims "did in fact feel threatened and fearful for their family's [sic] safety." *Id.* at 971.

[14] Against this background, the issue here is whether there was sufficient evidence from which a fact-finder could infer that a person in the same circumstances as Officer Stitsworth would reasonably experience the kind of visceral reaction that would make a person fear for his safety.

[15] Holloway said that he hoped Officer Stitsworth would die that night, said that he would "f**k…up" Officer Stitsworth. (Tr. at 23.) In response, Officer Stitsworth told Holloway that he had acquired another criminal charge. A few seconds later, Officer Stitsworth told Holloway to sit down after Holloway had gotten up from a seat and begun walking toward the officer—all while staggering drunk, handcuffed in the Saint Joseph County Jail, and wearing pants that were unbuttoned and falling down, thus impeding his movement.

Officer Stitsworth testified that he understood Holloway's statement as conveying a message that he "meant to do me harm." (Tr. at 23.) But Officer Stitsworth did not testify that he was fearful or that he felt threatened by Holloway's words. Moreover, another deputy was present in the room at the time, but there was no testimony that these words would or did elicit any reaction—let alone a visceral one—from him or others similarly situated.

[16] Granted, Officer Stitsworth testified that he understood the meaning of Holloway's statement, but that speaks only to Holloway's intent. Importantly, Officer Stitsworth's responses to Holloway, telling Holloway that an additional charge would be entered against him and telling Holloway to sit down, give no indication as to whether a person in Officer Stitsworth's position could reasonably believe Holloway's statement under the circumstances was a true threat. *See Brewington*, 7 N.E.3d at 969, 971. And because context matters, there is an absence of evidence on this element of the offense.

[17] Being a police officer is often fraught with danger and unpleasantness. But to affirm under these circumstances seems to me perilously close to rendering illusory the right to appeal a conviction such as this. *See Milam v. State*, 14 N.E.3d 879, 881 (Ind. Ct. App. 2014) (observing that "[a]n impossible standard of review under which appellate courts merely 'rubber stamp' the fact finder's determinations, no matter how unreasonable, would raise serious constitutional concerns because it would make the right to an appeal illusory.")

[18] I therefore respectfully dissent.