

FILED

Nov 28 2018, 11:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Valerie K. Boots
Kevin Wild
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Larry Ervin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 28, 2018

Court of Appeals Case No.
18A-CR-965

Appeal from the Marion Superior
Court

The Honorable Kurt Eisgruber,
Judge

Trial Court Cause No.
49G01-1702-F6-7818

**May, Judge.**

[1] Larry Ervin appeals his conviction of Level 5 felony criminal recklessness[1] and Level 6 felony pointing a firearm.[2] He presents two issues for review, which we restate as:

> 1) Whether the State presented sufficient evidence to support his convictions; and

> 2) Whether the trial court abused its discretion when it denied his proposed jury instructions regarding defense of property and defense of others.

In addition, we address, *sua sponte*, whether Ervin was subjected to double jeopardy. We vacate in part and affirm in part.

## Facts and Procedural History[3]

[2] On February 26, 2017, Ervin discovered his iPad was missing. Earlier in the day, he had been asked by a neighbor to assist with a car repair. He had last seen his iPad prior to helping his neighbor. Ervin contacted the police and was told someone would come to take a report. While waiting, Ervin used his Find My iPhone application ("App") and located his iPad in the area where he had

---

[1] Ind. Code §§ 35-42-2-2(a) & (b)(1)(A) (2014).

[2] Ind. Code § 35-47-4-3(b) (2014).

[3] We heard oral argument on this matter on October 30, 2018, at Rising Sun High School in Rising Sun, Indiana. We thank counsel for the quality of their written and oral arguments, for participating in the post-argument discussion with the audience, and for commuting to Rising Sun. We especially thank the faculty, staff, and students of the Rising Sun High School for their gracious hospitality and thoughtful post-argument questions.

gone to assist his neighbor. Shortly thereafter, Ervin saw, via the App, that his iPad was moving around Indianapolis. Ervin decided to follow it.

[3] Ervin arrived at the intersection of Sherman and Southeastern in Indianapolis when the App indicated his iPad was at the same intersection. Ervin saw only one other vehicle at the intersection—a black truck that he thought he had seen earlier in the day when he tried to help his neighbor. Ervin stopped his truck in the middle of the intersection and stepped out to attempt to retrieve his property from the person in the black truck. Ervin approached the black truck and shouted for the occupant to "Stop, freeze, stop." (Tr. Vol. II at 75.)

[4] Anthony Hines was driving the black truck. He had the windows rolled up and did not hear Ervin. Hines saw "a big white SUV stop[] in the middle of the intersection, a guy hop[] out of a truck, . . . grabbing for something[.]" (*Id*. at 57.) Hines had never met Ervin before. Hines then noticed Ervin was pointing a gun at him. Hines did not realize a vehicle was behind him, and he put his truck in reverse and backed into that vehicle—a Kia Sorento. Without stopping, Hines made a "right U-turn[,]" (*id*. at 58), and started to drive away. He heard Ervin start firing at him, "like [Ervin] peppered [Hines'] truck." (*Id*.) Hines executed the U-turn on the shoulder near a gas station. After verifying Ervin was not following him, Hines called 911 and went home. Hines talked to police at his home.

Ervin called 911 again after Hines left the scene. Ervin told the dispatcher he had attempted to shoot the tires of the truck. The dispatcher told Ervin to remain onsite and talk to the responding officer.

Kristin Armour was an eyewitness. Armour had her twelve-year-old daughter in the car with her. The daughter was screaming because of the gun fire. Armour called 911 "as soon as [she] seen [sic] [Ervin] pull out the gun[.]" (*Id.* at 75.) Armour parked at the gas station to talk to the police.

Anthony McGowan, the driver of the Kia, ducked down in his car when shots were fired. After the shooting stopped, McGowan exited his vehicle to talk to Ervin. McGowan said he "didn't have any fear [of Ervin] because [he] knew [Ervin] wasn't shooting at [him]." (*Id.* at 86.)

Michael Tedders was at the gas station, with his fifteen-year-old son. He heard "'Stop, stop,' then . . . pop-pop-pop-pop." (*Id.* at 92.) He and his son hid in their car during the shooting and stayed at the scene to talk to the police.

Indianapolis Metropolitan Police Department ("IMPD") Officer Richard Faulkner, Sr., was dispatched to the scene pursuant to a report of a "disturbance with shots fired." (*Id.* at 31.) He was only "about five blocks away[,]" (*id.* at 33), so he arrived in "[l]ess than a minute" after being dispatched. (*Id.* at 34.) He saw "several people in the [gas station] parking lot, in the grass area, yelling and waving their hands." (*Id.*) The people were yelling that Ervin was the shooter and had a gun.

Officer Faulkner located a white truck blocking the intersection with a white male walking toward it. Officer Faulkner pulled his gun and "yelled at [Ervin] to turn around" and show his hands. (*Id.* at 39.) Ervin leaned into his truck and did not do as he was told. Officer Faulkner had to repeat his order before Ervin complied. Officer Faulkner placed Ervin in handcuffs and read his Miranda rights to him.

Ervin told Officer Faulkner what had occurred, *i.e.*, that his iPad had been stolen, he had been tracking it, he located it at this intersection, and "he was going to initiate a citizen's arrest." (*Id.* at 42.) Ervin told Officer Faulkner that he had "started firing rounds at [the truck] because he thought he was going to be hit." (*Id.*)

IMPD Officer Kyle Hoover was sent to talk to Hines. He noted that Hines "was very rattled, very – he was very upset." (*Id.* at 98.) Officer Hoover noted Hines' truck had three bullet holes in it and had damage to the "rear bumper tailgate area that would be consistent with a fresh vehicle accident." (*Id.* at 99.) The bullet holes were all on the passenger side of the truck.

The State ultimately charged Ervin with Level 5 felony criminal recklessness and Level 6 felony pointing a firearm. At trial, Ervin requested the trial court give jury instructions for defense of property and for defense of other. The trial court stated:

> Ervin precipitated the events, one, by blocking the traffic in the intersection, and two, approaching, which was by all apparent – based on all the testimony I heard, a weapon was seen either at

the side or pulled at some point during this, but I do find that
[Ervin] precipitated the sequence of events, and the instructions
will be denied on that basis.

(*Id*. at 142.)

[14] During closing arguments, Ervin's counsel explained Indiana allows a person to use deadly force to defend other people and that was what Ervin was doing. Ervin's counsel also explained Ervin was allowed to use reasonable force to protect his property. Ervin argued he was: 1) trying to protect his property by approaching the truck in which Ervin believed the property was located; and 2) trying to protect people from a reckless driver when the driver of the truck tried to race away.

[15] The jury found Ervin guilty as charged. The trial court agreed with Ervin that no malice was present during the events but also agreed with the State that, due to the nature of the offense and that it included a firearm, some executed time was required. The trial court sentenced Ervin to three years, with two and one-half years suspended.

# Discussion and Decision

## Double Jeopardy

[16] At oral argument, *sua sponte*, we asked the parties whether a double jeopardy violation occurred herein. Article 1, Section 14 of the Indiana Constitution states: "No person shall be put in jeopardy twice for the same offense." Indiana

uses a two-part test for double jeopardy claims by deciding whether the offenses share statutory elements or whether the actual evidence used to convict on one count also establish the elements of the other count. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2009). Although the counts of pointing a firearm and criminal recklessness do not share all statutory elements, we review the evidence presented herein to determine whether the jury could have used the same evidence to find Ervin guilty of both charges.

[17]   To determine if a jury used the same facts to establish the elements of each offense, we consider the evidence, charging information, jury instructions, and arguments of counsel. *Garrett v. State*, 992 N.E.2d 710, 720 (Ind. 2013). The charging information alleged as Count I that Ervin "did perform an act that created a substantial risk of bodily injury to another person by shooting a firearm into . . . a place where people are likely to gather, to wit: a vehicle driven by [] Hines while [] Hines was in said vehicle[.]" (App. Vol. II at 47.) Count II alleged simply: "Ervin did knowingly or intentionally point a firearm . . . at [] Hines[.]" (*Id.*) The jury instructions also did not clarify whether Ervin pointed his gun at Hines at a time different than when Ervin shot his gun at Hines. That leaves us with the evidence presented and the arguments made by counsel.

[18]   At trial, contrary evidence was presented as to whether Ervin had his iPhone or his gun in his hand as he approached Hines' truck. Ervin, himself, testified he approached with his iPhone in his hand but then pulled and raised his gun when Hines revved his engine. He stated he then lowered the gun until he

thought Hines was going to hit the witnesses at the gas station. At that point, all parties agree Ervin started shooting in the direction of the truck. Thus, evidence was presented that would have allowed the jury to find that Ervin pointed his gun at Hines at a time separate from when Ervin shot his gun at Hines.

[19] When discussing the Level 6 felony pointing a firearm during closing arguments, the State argued Ervin pointed the gun when Hines revved the truck engine. However, the State followed this statement by saying: "And what really settles the fact that he pointed that gun is that Anthony Hines' truck was littered with bullets." (Tr. Vol. II at 146.) The State then proceeded to go through the elements of criminal recklessness wherein it stated the recklessness was proven by the fact Ervin "block[ed] traffic," got "out of [his] vehicle, frighten[ed] other individuals who d[id] not know what's going on, doing it with a gun, and firing off seven rounds." (*Id*. at 147.) Thus, the State, in closing argument, used the fact of Ervin's shooting the gun as part of the evidence to show he pointed the gun, and the State also used the facts occurring from the time Ervin stopped his truck to demonstrate that he was criminally reckless.

[20] The possibility of the jury using the same facts to support more than one charge cannot be "remote and speculative[.]" *Griffin v. State*, 717 N.E.2d 73, 89 (Ind. 1999), *cert. denied* 530 U.S. 1247 (2000). However, a "reasonable possibility" the jury used the same facts would indicate a defendant has been subjected to double jeopardy. *Id*. Herein, the charging information does not allege facts

that indicate Ervin pointed the gun at Hines at a time distinct from when he pointed the gun at Hines to shoot at him. The preliminary jury instructions merely instruct the jurors to consider how the law and evidence "appl[ies] to each count individually[,]" (App. Vol. II at 105), and cautions the jurors that each element of each charge must be proven by the State. None of the jury instructions specifically advised the jury it was required to find a separate act to prove each charge. The evidence presented was conflicting as to whether Ervin approached Hines' truck with the gun drawn or drew it only as he prepared to shoot. The State invited the jury to use the fact Hines' truck was "littered with bullets[,]" (Tr. Vol. II at 146), to support the charge of pointing a firearm, which is the same evidence supporting the charge of criminal recklessness.

[21] While the jury may have based its verdict on the fact Ervin approached Hines' truck with the gun pointed at the truck, an action that could reasonably be presumed to be separate from Ervin pulling the gun immediately prior to shooting, the jury was also free to use the drawing of the gun immediately before Ervin started firing to support both charges. Therefore, there is a reasonable probability that a double jeopardy violation occurred. Accordingly, the lesser charge of pointing a firearm must be vacated. *See Richardson v. State*, 717 N.E.2d 32, 55 (Ind. 1999) (when a double jeopardy violation occurs, the proper outcome is to "vacate the conviction with the less severe penal consequences"), *holding modified on other grounds by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013).

## Sufficiency of Evidence

[22] Ervin argues the State did not present sufficient evidence to overcome his defense of property and defense of others claims. Ervin claims he was defending his property when he approached Hines' truck. Thereafter, when Hines was driving away, Ervin claims he was defending others from an erratic driver.[4] A claim of "defense of property is analogous to the defense of self-defense." *Hanic v. State*, 406 N.E.2d 335, 339 (Ind. Ct. App. 1980). A claim of defense of other is also analogous to a claim of self-defense. *Rondeau v. State*, 48 N.E.3d 907, 919 (Ind. Ct. App. 2016), *trans. denied*.

[23] Our standard for reviewing a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same standard used for any claim of insufficient evidence. *Wallace v. State,* 725 N.E.2d 837, 840 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of the witnesses. *Adetokunbo v. State*, 29 N.E.3d 1277, 1280 (Ind. Ct. App. 2015). We consider only the

---

[4] As to Ervin's claim he was making a lawful citizen's arrest, Indiana Code section 35-33-1-4 states:

> (a) Any person may arrest any other person if:
>
>> (1) the other person committed a felony in his presence;
>>
>> (2) a felony has been committed and he has probable cause to believe that the other person has committed that felony; or
>>
>> (3) a misdemeanor involving a breach of peace is being committed in his presence and the arrest is necessary to prevent the continuance of the breach of peace.

Ervin did not see anyone, let alone Hines, steal the iPad. In order for the theft of the iPad to qualify as the lowest level felony, the iPad needed to be worth "at least seven hundred fifty dollars ($750)[.]" Ind. Code § 35-43-4-2(a)(1). No proof of the iPad's value was presented at trial. Therefore, Ervin's claims of making a lawful citizen's arrest are without merit because the alleged theft of his iPad was not "committed in [Ervin's] presence[.]" Ind. Code § 35-33-1-4(a)(3).

probative evidence and reasonable inferences supporting the trial court's decision. *Id.* "A conviction will be affirmed if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.* at 1280-81.

[24] To prove Ervin committed Level 6 felony criminal recklessness, the State needed to present evidence Ervin "recklessly, knowingly, or intentionally perform[ed] an act that create[d] a substantial risk of bodily injury to another person . . . while armed with a deadly weapon[.]" Ind. Code §§ 35-42-2-2(a) & (b)(1)(A) (2014).

[25] "A valid claim of self-defense is legal justification for an otherwise criminal act." *Wallace*, 725 N.E.2d at 840.

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> > (1) is justified in using deadly force; and
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

Ind. Code § 35-41-3-2(c).

With respect to property other than a dwelling, curtilage, or an occupied motor vehicle, a person is justified in using reasonable force against any other person if the person reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of a member of the person's immediate family, or belonging to a person whose property the person has authority to protect. However, a person:

> (1) is justified in using deadly force; and
> (2) does not have a duty to retreat;

only if that force is justified under subsection (c).

Ind. Code § 35-41-3-2(e).

[26] To prevail on such claims, a defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). "When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State,* 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.* If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[27] The witnesses all testified Ervin stopped in the middle of the intersection and shot at Hines' truck. Ervin, himself, also agrees he did those things. Ervin did not have the right to be in the middle of the intersection blocking all traffic. No evidence was presented Hines provoked the interaction; rather, all evidence points to the fact Ervin instigated it and willingly pursued it. The existence of either of these facts negates Ervin's claims of defense of property and defense of others. Therefore, without examining the final prong regarding reasonable fear of death or great bodily harm, we can unequivocally say the State met its burden to overcome Ervin's claims because Ervin had no right to block traffic and Ervin instigated the situation. *See, e.g., King v. State*, 61 N.E.3d 1275, 1284 (Ind. Ct. App. 2016) (State rebutted self-defense claim by presenting evidence King instigated the altercation), *trans. denied*.

[28] Nevertheless, if we examine whether Ervin could have had reasonable fear of death or great bodily harm, the State still overcame Ervin's claims. When viewing a claim of self-defense, we look to both a subjective and objective component: "(1) a defendant must have actually believed that the use of force was necessary to protect himself or herself; and (2) the belief must have been one that a reasonable person would have held under the circumstances." *Schermerhorn v. State*, 61 N.E.3d 375, 383 (Ind. Ct. App. 2016), *trans. denied*.

[29] Ervin's belief Hines had stolen his iPad was speculative—he did not see Hines steal it and he did not see Hines exercising unauthorized control over the iPad. Ervin's decision to shoot a gun in the direction of not only the fleeing truck but also the group of people he now argues he was trying to protect is beyond the

scope of what a reasonable person would have believed necessary. No evidence, beyond Ervin's subjective belief, was presented that anyone was in reasonable fear of death or great bodily harm from Hines. Ervin's belief in his right to effectuate a citizen's arrest in these circumstances was not only incorrect but his decision to do so in such a manner put more people at risk and was utterly unreasonable.

[30] The State presented sufficient evidence to prove Ervin committed criminal recklessness and, in the process of presenting such evidence, overcame Ervin's claims of defense of property and defense of others. *See Huls v. State*, 971 N.E.2d 739, 747 (Ind. Ct. App. 2012) (State effectively overcame claim of defense when it presented evidence Huls "instigated and participated in the violence"), *trans. denied*.

## Jury Instruction

[31] "The manner of instructing a jury is left to the sound discretion of the trial court." *Albores v. State,* 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied.* When we review the trial court's decision regarding jury instructions, we consider "(1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; [and] (3) whether the substance of the tendered instruction is covered by other instructions which were given." *Davis v. State*, 355 N.E.2d 836, 838 (Ind. 1976) (internal citations omitted). "When the claimed error is the failure to *give* an instruction . . . a tendered instruction is necessary to preserve error because,

without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request." *Scisney v. State*, 701 N.E.2d 847, 848 n.3 (Ind. 1998) (emphasis in original).

[32] A defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in evidence, *Creager v. State*, 737 N.E.2d 771, 777 (Ind. Ct. App. 2000), *trans. denied*, even if the evidence is weak and inconsistent. *Id.* It is within the province of the jury to determine whether the defendant's evidence was believable, unbelievable, or sufficient to warrant the use of force. *Id.* Generally, the determination whether a defendant acted in self-defense is a question of fact for the jury. *Id.* However, the evidence on which the claim is based must have some "probative value to support it." *Id.*

[33] Ervin claims the trial court abused its discretion when it refused to give the instructions regarding defense of property and defense of others. He argues that even though the trial court thought he had provoked the incident, he had presented enough evidence to support the instruction being read.

[34] As a matter of law, as discussed *supra*, Ervin could not have been acting in defense of his property or others as he was not in a place he was allowed to be—blocking an intersection—and as he instigated and provoked the situation. Therefore, the trial court properly declined to give Ervin's proposed instructions. *See id.* at 778 (when evidence "supports the trial court's conclusion

as a matter of law" that defendant was not in a place he or she was allowed to be, the trial court did not err in refusing to give a self-defense instruction).

# Conclusion

[35] As the jury may have used the same evidence to support its verdict of guilt on both charges, we vacate the charge of Level 6 felony pointing a firearm. Because the State presented sufficient evidence of Level 5 felony criminal recklessness and overcame Ervin's defense claims, we affirm that conviction. As a matter of law, Ervin was not in a place he was allowed to be and he instigated the situation, such that the trial court did not err when it refused to give jury instructions regarding defense of property and defense of others. Accordingly, we vacate in part and affirm in part.

[36] Vacated in part and affirmed in part.

Baker, J., and Bailey, J., concur.