## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2019, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Troy D. Warner
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey Lamont Reid,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 15, 2019

Court of Appeals Case No.
18A-CR-1829

Appeal from the St. Joseph
Superior Court

The Honorable Paul Singleton,
Magistrate

Trial Court Cause No.
71D06-1706-CM-2390

**Tavitas, Judge.**

# Case Summary

[1] Jeffrey Reid appeals his convictions for battery resulting in bodily injury, a Class A misdemeanor, and intimidation, a Class A misdemeanor. We affirm.

# Issues

[2] Reid raises two issues, which we restate as:

    I.    Whether the evidence is sufficient to convict Reid of battery resulting in bodily injury.

    II.    Whether the evidence is sufficient to convict Reid of intimidation.

# Facts

[3] Karagh Brennan manages Joe's Tavern and Catering ("Joe's Tavern") in South Bend. On June 7, 2017, several children from the neighborhood rode their bicycles to the corner in front of Joe's Tavern, where they stopped on the sidewalk. Brennan encountered Reid when she went outside to give the children popsicles, as she had on more than one occasion. Subsequently, a series of events occurred causing Brennan and Reid to argue; however, the exact details were recounted differently by each witness.

[4] According to Brennan, while she was outside, Reid and Joseph Panetti were walking down the street outside Joe's Tavern, when the men began "cuss[ing]" at her. Tr. p. 18. Brennan had never met Reid before that day. Reid asked Brennan if she had a problem with the children, to which Brennan responded

that she did not.[1]  Reid then grabbed Brennan and slammed her against the building.  Brennan believed Reid slammed her against the building twice, but she could not recall the exact number of times.  Brennan was able to return inside Joe's Tavern to call 911.  Reid followed Brennan into Joe's Tavern, carrying Brennan's hat that she had been wearing when she went outside.[2]

[5]     In telling a different version of events, Panetti testified that he overheard Brennan tell one of the children, his younger sister, to get off the Joe's Tavern property using profane language, and overheard Brennan call the children "retards" while the children were eating popsicles.  *Id.* at 93.  Reid and Brennan began to argue, and at that point, Panetti left the property before any physical interaction occurred.  Panetti stated that Reid stayed behind outside Joe's Tavern.

[6]     According to Reid's mother, Tammy Reid ("Tammy"), who witnessed the entire incident from her car down the street,[3] Reid and Brennan were arguing and Brennan "shove[d]" Reid.  *Id.* at 112.  At that point, Reid turned around and "slapped [Brennan's] hat off."  *Id.* at 113.  Subsequently, Brennan "took off

---

[1] There was some testimony later, by the responding officer, that perhaps one of the children was harassing Brennan while she was giving them popsicles.

[2] Donald Splawski, a witness inside Joe's Tavern who testified later at the trial, agreed that there was a "scuffle" in the entry-way of Joe's Tavern.  He noticed that a man had his hand on Brennan's face and "smacked her hat off her head."  Tr. p. 64.  Carla Jenkins, another witness inside Joe's Tavern who testified later at the trial, also stated that Reid "had [Brennan's] face [ ] up in the door and her head against the window."  *Id.* at 48.

[3] Tammy was waiting for Reid to give him a ride home.

into the bar," and Reid picked up Brennan's hat and walked into Joe's Tavern. *Id.* at 113.

[7] Carla Jenkins, who was inside Joe's Tavern, testified that she stood up and tried to stop Reid. Jenkins testified that Reid grabbed Jenkins by the arm, telling her that he would "f*** [Jenkins] right there on the bar" and referred to Jenkins as an "old b****." *Id.* at 52-53. Jenkins became scared that Reid was going to hurt or sexually assault her. Donald Splawski, another patron of Joe's Tavern, also testified that he heard Reid say to Jenkins that he would "f*** you right here and now, b****." *Id.* at 68. Splawski, however, testified that Jenkins did not stand and get in Reid's way. Splawski testified that he saw Reid throw Brennan's hat on the bar and leave.

[8] Brennan was able to escape out the back door of Joe's Tavern. Reid then left Joe's Tavern, and the police arrived five to ten minutes later. Officer Bruno Martinsky with the South Bend Police Department responded to Brennan's 911 call. When Officer Martinsky arrived, Reid was standing outside Joe's Tavern. Reid told Officer Martinsky that the people inside Joe's Tavern called him, and Reid's hands were trembling when he spoke to Officer Martinsky. Reid told Officer Martinsky that Reid accidentally knocked the hat off Brennan's head and that he tried to go back inside to return the hat.

[9] Officer Martinsky spoke with Brennan who was "visibly upset, shaking, [and] crying." *Id.* at 77. Officer Martinsky also took photographs of Brennan's

injury, which consisted of a tiny red spot on her face. Brennan testified her injuries included knots on her head, as well as a red spot on her face.

[10] The State charged Reid with Count I, battery resulting in bodily injury, a Class A misdemeanor; Count II, intimidation, a Class A misdemeanor; and Count III, criminal trespass, a Class A misdemeanor. On July 25, 2018, a bench trial was held, where witnesses testified to the foregoing facts.

[11] At the close of the State's case in chief, the trial court granted Reid's motion for directed verdict on Count III, criminal trespass, a Class A misdemeanor. The trial court found Reid guilty of Count I, battery resulting in a bodily injury, a Class A misdemeanor, and Count II, intimidation, a Class A misdemeanor. Reid now appeals.

## Analysis

[12] Reid challenges the sufficiency of the evidence of both convictions. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied*. Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the

point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

## I. Battery Resulting in Bodily Injury

First, Reid challenges the sufficiency of the evidence of his conviction for battery resulting in bodily injury. Specifically, Reid contends that he was acting in self-defense outside the bar. The State argues Reid's self-defense claim is waived because Reid failed to raise it in the trial court. We agree. Reid did not claim self-defense to the trial court.[4] Accordingly, Reid's self-defense argument on appeal is waived.

Waiver notwithstanding, we will address the merits of Reid's self-defense claim. "'A valid claim of self-defense is legal justification for an otherwise criminal act.'" *Ervin v. State,* 114 N.E.3d 888, 895 (Ind. Ct. App. 2018) (quoting *Wallace v. State,* 725 N.E.2d 837, 840 (Ind. 2000)), *trans. denied.* Pursuant to Indiana Code Section 35-41-3-2(c), "[a] person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." "'When a claim of self-defense is raised and finds support in the evidence, the State

---

[4] During closing argument, the State argued that Reid did not claim self-defense, and Reid did not object.

bears the burden of negating at least one of the necessary elements.'" *Id.* (quoting *King v. State,* 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*). "'The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief.'" *Id.* (quoting *King,* 61 N.E.3d at 1283). "If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt." *Id.* (citations omitted).

[15] Although Reid did not argue self-defense, in reaching its decision, the trial court stated, "with respect to self-defense, at least it has been mentioned I think a slap would be too force[ful], an unnecessary amount of force based on the push. And I think the slap did cause bodily injury." Tr. p. 146. The trial court found that Reid exerted more force than reasonably necessary under the circumstances. *See Weedman v. State,* 21 N.E.3d 873, 883 (Ind. Ct. App. 2014) (finding "[a] claim of self-defense will also fail if the person uses more force than is reasonably necessary under the circumstances") (citations omitted). We cannot reweigh the evidence to reach a different conclusion. Accordingly, the evidence is sufficient to convict Reid of battery resulting in bodily injury, a Class A misdemeanor.

## II. *Intimidation*

[16] Second, Reid challenges the sufficiency of the evidence of his intimidation conviction. To prove intimidation, a Class A misdemeanor, the State was required to prove: "A person who communicates a threat to another person,

with the intent: . . . (2) That the other person be placed in fear of retaliation for a prior lawful act . . . commits intimidation, a Class A misdemeanor." Ind. Code § 35-45-2-1(a)(2). As the State argues, the threat was Reid's statement that he would "f\*\*\*" Jenkins at the bar, while calling Jenkins a "b\*\*\*\*." Tr. pp. 52-53. The lawful action Reid retaliated against was Jenkins' attempt "to get in the way of [Reid] and [Brennan]," so that Jenkins could prevent Reid from chasing Brennan. *Id.* at 52. The deputy prosecutor argued in closing arguments that the prior lawful act was Jenkins' attempt "to prevent [Reid] from continuing his pursuit of [Brennan]."[5] *Id.* at 133.

### *A. Threat*

[17] Reid argues that the statements made to Jenkins do not fit the definition of a true threat. Specifically, Reid contends that it would have been unreasonable for Jenkins to think that Reid actually would sexually assault Jenkins in the bar where other people were present. Pursuant to Indiana Code Section 35-45-2-1(c), a threat is defined as:

> an expression, by words or action, of an intention to:
>
> > (1) unlawfully injure the person threatened or another person, or damage property;

---

[5] The State went on to clarify, that "[w]hether [Jenkins] got up and moved ten feet, whether she turned her chair, whether she just barely got out of it and directed her comments to him she made an attempt, a lawful attempt to stop [Reid] from going after [Brennan] to which he responded by grabbing her arms and having a few choice words about what he might do to her." Tr. pp. 145-46.

(2) unlawfully subject a person to physical confinement or restraint;

(3) commit a crime;

(4) unlawfully withhold official action, or cause such withholding;

(5) unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees or expenses;

(6) expose the person threatened to hatred, contempt, disgrace, or ridicule;

(7) falsely harm the credit or business reputation of the person threatened; or

(8) cause the evacuation of a dwelling, a building, another structure, or a vehicle.

[18] "Our [S]upreme [C]ourt clarified in *Brewington v. State* that true threats depend on two necessary elements: (1) that the speaker intend[ed] his communications to put his targets in fear for their safety, and (2) that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target." *Fleming v. State,* 85 N.E.3d 626, 629 (Ind. Ct. App. 2017) (citing *Brewington v. State,* 7 N.E.3d 946, 964 (Ind. 2014), *reh'g denied*)). Here, there is sufficient evidence of both prongs.

[19] As to *Brewington*'s first prong, the evidence showed that Reid made these statements to Jenkins when he was angry. Reid had just finished arguing with Brennan outside of Joe's Tavern and had followed Brennan inside while still angry. The trial court heard the witness testimony[6] regarding Reid's statements and demeanor inside Joe's Tavern, and it was reasonable for the fact finder to conclude that Reid intended to put Jenkins in fear of her safety. *See Fleming,* 85 N.E.3d at 629 (concluding that the first prong of *Brewington* was satisfied when Fleming "directly threatened to beat Mr. Kottkamp's a[**]" and the threat was made "while Fleming was angry") (internal quotations omitted).

[20] As to *Brewington*'s second prong, the evidence indicates that Jenkins was scared, and believed that Reid was going to hurt or sexually assault her. Even if we accept as true Reid's argument that it is unlikely he would have sexually assaulted Jenkins in public, this fact is not determinative. Reid's statements in the context of the events in Joe's Tavern clearly were statements of a threat of violence. *See e.g., Holloway v. State,* 51 N.E.3d 376, 378 (Ind. Ct. App. 2016) (affirming Holloway's intimidation conviction and noting that "Holloway cites no authority for the proposition that a person must be capable of inflicting injury when the statement is made . . ."), *trans. denied.* It was, therefore, reasonable for the trial court, as factfinder, to determine that Reid's statements would cause fear in a reasonable person similarly situated to Jenkins. The

---

[6] At the end of the trial, the trial court stated that it found "that the most credible witnesses that we have are [Tammy] as well as Ms. Jenkins and Mr. Splawski. . . ." Tr. p. 146.

evidence supports this conclusion, and thus, we cannot say there is insufficient evidence to find that Reid communicated a true threat.

## B. Prior Lawful Act

[21] Next, Reid argues the evidence does not suggest that Jenkins attempted to intervene when Reid entered Joe's Tavern and followed Brennan, which was the prior lawful act articulated by the State for Reid's intimidation conviction. Reid's argument focuses on the conflicting testimony between Jenkins and Splawski. At the trial, Splawski testified that Jenkins did not actually stand up between Reid and Brennan. Jenkins, however, testified that she did stand in front of Reid, although she acknowledged that some physical issues limited the speed with which she could do so. The determination of whether Jenkins actually was able to get between Brennan and Reid was a question of credibility for the trial court. The trial court ultimately weighed the credibility of the witnesses and made a determination, as fact finder, of what occurred that day at Joe's Tavern. In order to disagree with the trial court, we would need to reweigh the evidence and find a different version of the events more credible, which we cannot do.[7] Based on the foregoing, the evidence is sufficient to convict Reid of intimidation, a Class A misdemeanor.

---

[7] Regardless, as we have noted above, the State's prior lawful act that it articulated at trial was not solely based on a theory that Jenkins literally stood between Reid and Brennan, but instead that Jenkins attempted to do so. *See* Tr. pp. 145-46.

## Conclusion

[22] The evidence is sufficient to convict Reid of battery resulting in bodily injury, a Class A misdemeanor, and intimidation, a Class A misdemeanor. We affirm.

[23] Affirmed.

Baker, J., and May, J., concur.