## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2019, 10:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Andrew Chaney,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 17, 2019

Court of Appeals Case No.
18A-CR-2792

Appeal from the
St. Joseph Superior Court

The Honorable
John M. Marnocha, Judge

Trial Court Cause No.
71D02-1802-F1-2

**Kirsch, Judge.**

[1] Michael Andrew Chaney ("Chaney") appeals his conviction for aggravated battery,[1] a Level 3 felony, and raises three issues, which we restate as:

I. Whether the State presented sufficient evidence to rebut Chaney's claim of self-defense;

II. Whether the trial court abused its discretion in allowing testimony about Chaney's prior possession of a knife; and

III. Whether the trial court abused its discretion in not allowing testimony about why Chaney disliked the victim.

[2] We affirm.

## Facts and Procedural History

[3] Chaney was acquainted with Isaac Danley ("Isaac") and Astranah Danley ("Astranah"), Isaac's sister, and often gave them rides. *Tr. Vol. II* at 75-77; 210-11. On January 23, 2018, Izaiah Davis ("Izaiah") was house sitting for his grandmother at her South Bend home ("the home"). *Id.* at 112, 141, 212-13. Astranah, Izaiah's girlfriend, was also staying with him. *Id.* at 212-13. Only Izaiah and Astranah were allowed in the home. *Id.* at 113. At some point on that date, Isaac and Chaney drove to the home. *Id.* at 76-77. While they were on their way, Isaac saw Chaney wrap the handle of a "foot-long knife" with

---

[1] *See* Ind. Code § 35-42-2-1.5.

double-sided tape. *Id.* at 168. During the drive to the home, Chaney asked Isaac to help him attack Izaiah. *Id.* at 190-91.

[4] When Chaney and Isaac arrived at the home, Chaney exited the car and knocked on the front door. *Id.* at 77. When Astranah answered the door, Chaney asked if he could come inside to use the restroom. *Id.* at 78. Astranah initially hesitated because she was not supposed to allow anyone inside the home, but she eventually agreed to let Chaney in the home. *Id.*

[5] A short while later, Izaiah was standing in his bedroom when he saw Chaney standing in the doorway. *Id.* at 114-15. Izaiah told Chaney to leave. *Id.* at 115-16. Chaney did not comply with Izaiah's request; instead, he reached for a knife and stabbed Izaiah in the arm. *Id.* at 116-17. The blade of the knife was seven or eight inches long. *Id.* at 122-23. Izaiah pushed Chaney aside and ran from his room toward the kitchen. *Id.* at 117. Izaiah backed himself between the dryer and refrigerator as Chaney approached him. *Id.* at 83, 118. Chaney yelled "you have to die" and stabbed Izaiah again. *Id.* at 118-20. Izaiah grabbed Chaney by his shirt and threw him against a window. *Id.* at 118. Izaiah ran from the kitchen, through the living room, and into the carport. *Id.* at 120. When Izaiah got to the carport, he fell to the ground, and Chaney stood over him while brandishing the knife. *Id.* Izaiah grabbed Chaney, and once it appeared that Izaiah had the upper hand, Izaiah told Chaney that he would let him go if Chaney agreed to let Izaiah live. *Id.* Chaney agreed, released Izaiah, kicked him in the side, and ran out the door to the car where Isaac was waiting.

*Id.* at 120, 157-58. Izaiah suffered a collapsed lung. *Id.* at 30. In total, Chaney stabbed Izaiah six times. *Id.* at 122.

[6] On February 1, 2018, Chaney was arrested. *Id.* at 199. That same day, he was interviewed by South Bend Police Detective Joshua Brooks ("Detective Brooks"). *Id.* at 189. Chaney told Detective Brooks that he "jabbed" at Izaiah with a pencil in self-defense. *Id.* at 193. Detective Brooks also reviewed Facebook messages between Chaney and Astranah in which Chaney told Astranah that he was not afraid of Izaiah. *Id.* at 187-88. On February 8, 2018, the State charged Chaney with Count I, Level 1 felony attempted murder; Count II, Level 3 felony aggravated battery; and Count III, Level 5 felony battery with a deadly weapon. *Appellant's App. Vol. II* at 11-12. On February 23, 2018, Chaney filed a notice of self-defense. *Id.* at 4.

[7] During the trial, Isaac testified, over Chaney's objection, that Chaney possessed a foot-long knife as he and Chaney drove to the home. *Tr. Vol.* II at 168. Chaney claimed this testimony was not relevant and was prejudicial because it was not clear whether the knife that Isaac described was the same knife that Chaney used to stab Izaiah. *Id.* at 164-68. The trial court overruled Chaney's objection, finding that the testimony was relevant because it showed that Chaney had access to a knife, and that while the knife that Isaac saw might have a "nebulous" connection to the case, Chaney could highlight this tenuous connection to the jury through his cross examination of Isaac. *Id.* at 164-65. As to the characteristics of the knife that Chaney used to stab Izaiah, Doctor

Scott Thomas ("Dr. Thomas") testified that the knife used to cause Izaiah's injuries would have to be "significant." *Id.* at 34.

[8] Chaney sought to elicit testimony from Astranah about why Chaney did not like Izaiah. *Id.* at 94. The State objected on relevance grounds, and the trial court sustained the objection. *Id.* at 95. Later, Chaney again tried to elicit the same testimony from Astranah "because [Chaney] heard from [Isaac] that Izaiah was mistreating Astranah." *Id.* at 104-05. The State objected, and the trial court sustained the objection, ruling that the testimony Chaney was trying to elicit would be based on speculation and hearsay. *Id.* at 105.

[9] Chaney testified that he was afraid of Izaiah because of Izaiah's reputation for violence and because Izaiah was "mean and brutal and big and bad." *Id.* at 227. This "heightened [Chaney's] fear." *Appellant's Br.* at 6. Chaney was also afraid of Izaiah because Izaiah was 6 feet 8 inches tall and weighed 300 pounds while Chaney was only 5 feet 10 inches tall and weighed only 185 pounds. *Tr. Vol. II* at 222. Chaney also testified that he is right-handed, but during the struggle the knife was in his left hand. *Id.* at 222-25. He also testified that he thought he had stabbed Izaiah with a pencil, not a knife: "I thought I grabbed a pencil, you know, and I jabbed at him with it. I knew it was something cylindrical and I must have picked it up in his bedroom." *Id.* at 221.

[10] During closing arguments, Chaney's attorney argued that Chaney acted in self-defense. *Tr. Vol. III* at 50-56. The jury rejected that argument and found Chaney guilty of Count II, aggravated battery, and Count III, battery with a

deadly weapon, while acquitting him of the attempted murder charge (Count I).
*Appellant's App. Vol. II* at 129. The trial court entered judgment of conviction only on Count II, aggravated battery. *Id*. at 129-30. On October 24, 2018, the trial court sentenced Chaney to twelve years executed in the Indiana Department of Correction. *Id.* at 130. Chaney now appeals.

# Discussion and Decision

## I.   Evidence Sufficient to Rebut Claim of Self-Defense

[11]   Chaney argues that the State failed to present sufficient evidence to rebut his claim of self-defense. We review such a challenge the same way we review any claim of insufficient evidence. *Ervin v. State*, 114 N.E.3d 888, 895 (Ind. Ct. App. 2018), *trans. denied*. We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the probative evidence and reasonable inferences supporting the fact-finder's decision. *Id*. We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

[12]   Indiana's self-defense statute provides:

> (c) A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.

Ind. Code Ann. § 35-41-3-2(c).

> To prevail on such claims, a defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements.

*Ervin*, 114 N.E.3d at 896 (internal citations omitted). An initial aggressor must withdraw from the encounter and communicate the intent to do so to the other person before he may claim self-defense. *Kimbrough v. State*, 911 N.E.2d 621, 635 (Ind. Ct. App. 2009).

[13] Here, Chaney claims that the State failed to rebut his claim of self-defense. In a convoluted argument, Chaney appears to contend that he did not provoke the incident because he grabbed the knife with his left hand. Noting that he is right-handed, Chaney appears to claim that grabbing the knife with his left hand shows that he did not provoke, instigate, or participate willingly in the incident. Second, he appears to claim that because he suffered some injuries during the incident, he was not at fault.

[14] Chaney's argument is unavailing because it impermissibly asks us to reweigh the evidence. *See Ervin*, 114 N.E.2d at 895. The evidence most favorable to the judgment shows that Chaney provoked the incident and, therefore, was not without fault. Chaney enlisted the aid of Isaac, asking Isaac to help him attack Izaiah. *Tr. Vol. II* at 190-91. Chaney escalated the situation when he entered Izaiah's room unannounced and uninvited. *Id.* at 114-15. Despite being told to leave, Chaney pulled out a knife. *Id.* at 117. Chaney did not withdraw from

the incident but instead worsened the situation by stabbing Izaiah in the arm and then chasing Izaiah throughout the home, stabbing him six times overall. *Id.* at 117-22; *see Kimbrough*, 911 N.E.2d at 635. Thus, in establishing that Chaney provoked the incident, the State negated at least one element of Chaney's self-defense claim, so Chaney's claim that the State failed to rebut his self-defense claim must fail.[2] *See Ervin*, 114 N.E.3d at 896.

## II. Testimony About Chaney's Access to Knife

[15] Chaney argues that the trial court abused its discretion when it allowed Isaac to testify that when he and Chaney were driving to the home, Isaac saw Chaney wrap the handle of a "foot-long knife" with double-sided tape. *Tr. Vol. II* at 168. Chaney claims this testimony was irrelevant because it did not establish that this was the same knife Chaney used to stab Izaiah. Chaney argues in the alternative that even if Isaac's testimony was relevant, its prejudicial impact outweighed its probative value.

---

[2] The State also negated the other two elements of Chaney's claim of self-defense. First, Chaney was not in a place he had the right to be. *See Ervin v. State*, 114 N.E.3d 888, 896 (Ind. Ct. App. 2018), *trans. denied*. Only Izaiah and Astranah were allowed in the home. *Tr. Vol. II* at 113. Astranah let Chaney inside but only to use the restroom. *Id.* at 77-78. Once he finished using the restroom, Chaney did not leave. *Id.* at 80. Once Izaiah realized that Chaney was inside the home, Izaiah told him to leave, but Chaney refused. *Id.* at 115. Second, Chaney did not have a reasonable fear of death or great bodily harm. *See Ervin*, 114 N.E.3d at 896. While Izaiah was larger in stature and size than Chaney, he was not wielding a weapon during the incident as was Chaney. *Tr. Vol. II* at 121, 135. Izaiah tried to evade Chaney by running from his bedroom to the kitchen as Chaney was yelling, "you have to die." *Id.* at 82, 113, 117, 118, 120. Chaney's purported fear of Izaiah was not reasonable. *See Ervin*, 114 N.E.3d at 896.

[16] We review evidentiary rulings for an abuse of discretion. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). A trial court abuses its discretion when its ruling is either clearly against the logic and effect of the facts before it, or when it misinterprets the law. *Id.* To determine if an evidentiary ruling prejudices a defendant, "we assess the probable impact the evidence had upon the jury in light of all of the other evidence that was properly presented." *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014).

[17] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401. "A trial court's discretion is wide on issues of relevance and unfair prejudice. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). "In order to be relevant, the evidence at issue need only have some tendency, however slight, to make the existence of a material fact more or less probable or tend to shed any light upon the guilt or innocence of the accused." *Hinkle v. State*, 97 N.E.3d 654, 663 (Ind. Ct. App. 2018) (quoting *Smith v. State*, 982 N.E.2d 393, 402 (Ind. Ct. App. 2013), *trans. denied.*), *trans. denied*. This standard for relevancy sets a low bar. *Snow*, 77 N.E.3d at 177.

[18] Isaac's testimony about the knife that Chaney possessed before stabbing Izaiah was relevant because it tended to prove that Chaney had access to a knife before he stabbed Izaiah. Even if the knife Chaney used to stab Izaiah was different than the knife that Isaac observed, Isaac's testimony tended to prove that the knives were of the same type. "Evidence that a defendant had access to a

weapon of the type used in a crime is relevant to a matter at issue . . . ." *Pickens v. State*, 764 N.E.2d 295, 299 (Ind. Ct. App. 2002), *trans. denied*. Isaac testified that the knife he observed was about twelve inches long. *Tr. Vol. II* at 168. The testimony of both Izaiah and Dr. Thomas established that the knife Isaac observed was of the same type as the knife Chaney used to stab Izaiah. Izaiah testified that Chaney wielded a knife with a blade seven or eight inches long, and Dr. Thomas testified that the knife that caused Izaiah's injuries would have to be "significant." *Id.* at 34; 122-23. Thus, Isaac's testimony had some tendency to make it probable that Chaney had access to a knife that was of the same type that he used to stab Izaiah. *See Hinkle*, 97 N.E.3d at 663. Chaney had the opportunity to challenge the weight the jury should afford this testimony, and he broached this issue during his cross-examination of Detective Brooks. *Tr. Vol. II* at 203. *See Mateo v. State*, 981 N.E.2d 59, 67 (Ind. Ct. App. 2012 ("In sum, whether the knives were the same ones that were used in the stabbings . . . was a question of the fact for the jury ultimately bearing upon the weight that was to be assigned to the knives that the police collected and not upon whether they were admissible."), *trans. denied*.

[19] Additionally, the probative value of Isaac's testimony outweighed its potential prejudicial impact. Under Indiana Rule of Evidence 403, "relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.'" *Snow*, 77 N.E.3d at 177 (quoting *Escamilla v. Shiel Sexton Co.*, 73 N.E.3d 663, 668 (Ind. 2017)). This

balancing is committed to the trial court's discretion. *Dunlap v. State*, 761 N.E.2d 837, 842 (Ind. 2002). Here, Isaac's testimony that Chaney had access to the type of knife that he used to stab Izaiah also established that the probative value of Isaac's testimony outweighed its potential prejudicial impact. *See Thompson v. State*, 728 N.E.2d 155, 160 (Ind. 2000) (the possibility of prejudice "is clearly outweighed by the probative value of testimony that Thompson had access to a weapon of the type used in the murder").

[20] In sum, the trial court did not abuse its discretion in admitting Isaac's testimony about Chaney's knife. Isaac's testimony was relevant, and its probative value outweighed its potential prejudicial impact.

### III. Testimony About Why Chaney Disliked Izaiah

[21] Finally, Chaney alleges the trial court abused its discretion in not letting Astranah testify about why Chaney disliked Izaiah. On direct examination, the State asked Astranah, "Were you made aware that [Chaney] did not like your boyfriend, [Izaiah]?" *Tr. Vol. II* at 74. Astranah said she was aware of this. *Id.* On cross examination, Chaney's attorney asked Astranah why Chaney did not like Izaiah. *Id.* at 94. The State objected on grounds of relevance, and the trial court sustained the objection. *Id.* at 95. Later, Chaney again broached this topic, asking Astranah whether Chaney disliked Izaiah because Isaac had told Chaney that Izaiah was mistreating Astranah. *Id.* at 104-05. Chaney argued that the State opened the door to this testimony, but the trial court ruled the

testimony was inadmissible because Chaney was asking Astranah to speculate about Chaney's thoughts and also attempting to elicit hearsay. *Id.* at 104-05.

[22] We review evidentiary rulings for an abuse of discretion. *Williams*, 43 N.E.3d at 581. A trial court abuses its discretion when its ruling is either clearly against the logic and effect of the facts before it, or when it misinterprets the law. *Id.* Here, when Chaney asked Astranah to testify about what Isaac told him, Chaney was trying to introduce hearsay. "Hearsay is inadmissible unless these rules or other law provides otherwise." Ind. Evidence Rule 802. Chaney cites no exception to the hearsay rule that would allow admission of such testimony. Also, when asking Astranah why Chaney disliked Izaiah, Chaney asked Astranah to speculate on Chaney's state of mind. Chaney presented no evidence that Astranah had personal knowledge about Chaney's reasons for disliking Izaiah, so the trial court did not abuse its discretion in not allowing Astranah to testify about Chaney's state of mind. *See* Ind. Evidence Rule 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Finally, the testimony Chaney sought from Astranah was irrelevant as it was of no consequence to the matters at issue at trial. *See* Ind. Evidence Rule 401. The reason Chaney disliked Izaiah had no bearing on Chaney's claim of self-defense or any other justification for Chaney's behavior. The trial court did not abuse its discretion by preventing Astranah from testifying about the relationship between Chaney and Izaiah.

[23] Affirmed.

Vaidik, C.J., and Altice, J., concur.